## WILLIAM H. BROWNBACK

v.

## HORATIO M. VANDEVEER.

*Warehousemen—Trover—Wheat in Store—Evidence.*

This court declines, in view of the evidence, to interfere with the judgment for the plaintiff in an action of trover based upon the alleged conversion by a warehouseman of a certain quantity of wheat.

[Opinion filed June 12, 1891.]

APPEAL from the Circuit Court of Christian County; the Hon. JACOB FOUKE, Judge, presiding.

Messrs. A. McCASKILL & SON and J. C. McBRIDE, for appellant.

Messrs. JAMES M. TAYLOR and JOHN G. DRENNAN, for appellee.

PLEASANTS, J.    This was an action of trover against appellant for an alleged conversion of 810 bushels of wheat.    The

trial, which was by the court without a jury upon the issue of not guilty, resulted in a judgment for plaintiff for $563.32.

As to the law of the case there was no important difference between the parties nor between either of them and the court.

Appellant contends that the evidence failed to show such an interest of appellee in the property as was required in order to maintain the action, or any sufficient demand of it by him; and also that the damages assessed exceeded the amount shown.

He was a grain dealer, running a warehouse and elevator at Edinburg. The wheat in question was delivered to him there by tenants of appellee, mixed with other of like grade and disposed of in the usual course of his business. He admits his understanding that the proceeds were to be paid to appellee, but insists that the wheat was the property of the tenants until so delivered, and by the delivery became his.

On the other hand appellee claims there was no sale to appellant; that the wheat was delivered in his name and for him, as his, and subject to his sole exclusive control; that appellant refused to pay the price he asked for it, whereupon he tendered the amount due for storage and demanded the property.

Of the 810 bushels in controversy, 736 were delivered early in August, 1889, by William Berry, who was then in arrears for the rent of the preceding year ($480). Appellee and his son testified that in June, Berry came to his office, reported the prospects as to the wheat crop and agreed to deliver it at one of the warehouses in Edinburg in his name and for him. On the 17th of July he addressed to appellant a note as follows: "Mr. William Berry (son of R. E. Berry) has land leased of me and has not paid the rent. Of this you will take notice, and if you buy grain of him you will make arrangements to pay the amount due from him." But he was not satisfied with the security of this agreement of Berry and notice to appellant, the wheat being still the property and under the control of the tenant. Therefore, in August, when

the threshing was in progress, he placed a distress warrant in the hands of constable Sharp with directions to levy it unless he should be satisfied that Berry would deliver it as he had agreed and his father should become responsible for his failure. Sharp testified that William Berry said he would deliver it in Vandeveer's name and that Vandeveer was to have the proceeds; that R. E. Berry agreed to see that it was deposited in Vandeveer's name; that appellee was present and heard a part of his conversation with R. E. Berry, and told witness on two occasions, within a week or two afterward, that the wheat had been deposited there in appellee's name. He did not himself see it delivered, nor know what the arrangement between Berry and appellant in reference to it was; and he had no authority from appellee to make any with either, as to when, or who should say when, it was to be sold, nor did he know or remember whether anything on that subject was said by appellant or either of the Berrys. Each of them testified that on one occasion or another it was said in the presence of Sharp that William Berry was to have the selling, or fixing the time of selling, and thus of determining the price, which was to be the market price of like grain at the time so fixed, but the proceeds were to go to appellee, and that Sharp said that was right, or was the understanding. Appellant and William Berry stated that such was the arrangement between them, and that Berry claimed that he had until the first day of the next June to fix the time of sale. He claimed on the witness stand that he had never sold the wheat to anybody and it was still his. Appellant said he understood that since Berry was not to get back the grain delivered, nor a like quantity of the same grade, the delivery made a sale to him, though for a price to be thereafter determined and paid to a third party the market price on the day Berry should choose for settlement.

But it appears that soon after the delivery appellant called at the bank of H. M. Vandeveer, informed Eugene Vandeveer, appellee's son, of the fact of such delivery and showed him a memorandum of the weights. Eugene testified that he then asked appellant what wheat was worth, to which the latter replied, "Seventy cents a bushel;"

that he then said: "Berry seems inclined to be fair with us, and I think we will not want to sell the wheat without consulting his wishes for the present, but I will see my father about it;" that his father said: "Tell Brownback to hold the wheat for me until further notice;" that he "wanted to wait and see Berry before selling, to see what his wishes were;" he "didn't want to act arbitrarily about it;" which the witness said he did tell Brownback, who replied, "All right," or something of that kind.

Brownback's account of this conversation is shorter, but widely different. He says: "I told him that Berry had hauled his wheat in and asked him if it was true that Berry had the right of selling the wheat, and he said he would go upstairs and see his father about it. He came back and said: 'It is all right. William Berry has the right of selling the wheat, but I want it distinctly understood that the proceeds are to go to my father.' I said, 'I understand that.'"

The only other witness as to this conversation was L. T. Slater, who testified that appellant "came into the bank in the early part of August, '89, and inquired for Vandeveer. Vandeveer was introduced to him, and Brownback said he had come to see him about the Berry wheat. They had a paper they referred to. Something was said about the price of wheat. Vandeveer said to hold the wheat on deposit. Don't remember of anything being said about Berry having the right of saying when the wheat should be sold."

Vandeveer's version is not only thus corroborated, but is in itself the most consistent and probable. His father testified that Berry's agreement in June was to deliver the wheat for him, in his name and under his control, to sell as he might sell anything else he owned. He took measures to have it performed, and claimed that it was performed. Why, then, should he send word to appellant that Berry had the right of selling? Besides, Eugene also knew the agreement and how his father understood it. He had no occasion, therefore, to go upstairs and see him about that, but might well do so about selling at the present market price, which he was informed by appellant was seventy cents, without consulting Berry.

Thus it seems to have been shown, by a clear preponderance of the evidence, that appellant then recognized the property and right of control as in appellee. He acted as if he had so understood it before. He accepted appellee's instruction " to hold the wheat for him until further notice," and not as vendee, but " on deposit."

Other evidence in the case tended to show that appellant entered the wheat on his books as Vandeveer's; that he made an offer to appellee for it, not as of the proceeds of its sale already made, but as an offer to purchase, being responsive to an offer then made by appellee to sell; that when demand was made of the wheat, he did not at first refuse absolutely or on any ground involving a denial of appellee's right, but because other business prevented his attending to it at that time; that he promised to comply on the following Monday; and that before that day, and very soon after the promise, he declared to appellee's agent that he would not deliver it.

He claimed that, in the meantime, he had informed Berry of the demand made, and been by him forbidden to comply. But if, by his agreement with Berry and estopping admission to appellee, he had complicated his relations so as to be subject to liability to both, it was his own fault, and he can not set up his contract obligations to one as an excuse for what would otherwise have been a tort against the other. Appellee denies that he had any notice of the alleged contract. There was no evidence to the contrary, unless it was the statement said to have been made to Sharp, as above mentioned. But Sharp had no authority to make or consent to such an arrangement. His agency was limited to seeing that the wheat was delivered for and in the name of, appellee. He had no recollection of the statement referred to, and if it was made in his presence it did not affect appellee as notice. Moreover, as between Berry and appellee, it appeared by the testimony of two to one, in addition to that already mentioned, that, on the 23d of August, they settled the matter by an agreement which would have extinguished the alleged right of Berry, if it had been before reserved. By that agreement, as testified to by appellee and his son, the parties reck-

oned the wheat at seventy cents per bushel, and Berry was credited for the full amount at that rate by indorsement then made on his copy of the lease. Berry denied that there was such a settlement, and said they only counted up to see how much he would still be owing if the wheat should bring seventy cents; that he left his copy of the lease with them at their request, and the indorsement was not then made; but appellee and his son very positively affirmed it, and the lease, with the credit indorsed, was introduced.

The evidence relating to this transaction was objected to and its admission is the only ruling in the course of the trial that is seriously complained of. Had the cause been tried by a jury, the objection would be worthy of more consideration. Appellant's rights, as existing when he received the wheat, could not be affected by any subsequent arrangement between Berry and appellee without his consent. But it does not appear that the court refused or modified any proposition of law submitted on the part of the defendant, nor are any as asked or given, shown in the abstract.

It may be presumed that counsel called attention to this objection, by some of them, and that the court concurring in their view, did not misapply this evidence to the injury of the defendant. It was admissible against Berry, both as claimant and witness for appellant, and tends to show that appellee, when he directed appellant to hold the wheat for him (if he did so direct, which was a question of fact), and when he demanded it, had no notice of the alleged arrangement between him and Berry, but understood that the wheat was his and to be settled for by him with Berry. Appellant is responsible only for his own recognition and admission of appellee's property and right of possession and control, and the presumption is that the court below so held. The reference above made shows there was evidence tending to prove and warranting the finding; that as against Berry, appellant acquired this property and right—not by the agreement in June nor by the written notice to appellant, but by the delivery for him and in his name; and that appellant did so recognize and admit it as to estop his denial of it. His own statement that he asked

Eugene if it was true that Berry had the right of-selling, whether true or untrue, is evidence that he did not rely upon the arrangement set up in his defense.

The other seventy-three bushels were delivered by Mr. Houchen, another tenant of appellee, in the name of Eugene Vandeveer. But Eugene testified that at the bank interview mentioned, he informed appellant that it also was his father's and to be held and disposed of like the other. Houchen makes no claim to it. And as to the damages, there was also such a conflict as made the finding conclusive.

We see no reason to suppose that another trial could result differently. The judgment will be affirmed.

*Judgment affirmed.*